**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TELEFONIX, INC., ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | No. 12 C 4362 |
| v. ) | |
| ) | |
| RESPONSE ENGINEERING, INC. and ) | |
| RICHARD E. SKOWRONSKI, ) | |
| ) | |
| Defendants/Counterclaim Plaintiffs. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On June 5, 2012, Plaintiff Telefonix, Inc. ("Telefonix") filed a one-count complaint alleging breach of contract against Defendants Response Engineering, Inc. ("Response") and Richard E. Skowronski ("Skowronski") (collectively, the "Defendants"). (R. 1, Compl.) On June 7, 2012, Telefonix filed an amended complaint. (R. 8.) Defendants filed an answer to the amended complaint and eleven counterclaims on July 16, 2012. (R. 14, Counter.) On August 6, 2012, Telefonix filed a motion to dismiss certain of Defendants' counterclaims pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6). (R. 21, Mot. to Dis.) For the following reasons, the Court dismisses Counterclaims V-XI, without prejudice.

**FACTUAL BACKGROUND**

Defendants allege the following facts in support of their claims, which the Court accepts as true for the purpose of this motion. Richard Skowronski, a mechanical engineer and inventor, founded and incorporated Response Engineering, Inc. in 1989. (Counter. ¶ 6.) In 1994,

Response entered into a written agreement to design a 2.5" cord reel[1] for Telefonix at a discounted rate of $35 per hour in exchange for a per unit royalty payment for each 2.5" cord reel sold by Telefonix ("the 1994 Agreement"). (*Id*. ¶¶ 9-10.) In 2000, Telefonix and Response signed another written agreement to supplement the 1994 Agreement ("the 2000 Agreement"). (*Id*. ¶ 13.) According to the 2000 Agreement, Telefonix agreed to pay Response the discounted $35 per hour rate plus royalty payments of $0.25/each and also to pay Response a higher, non-discounted rate without a royalty on other projects. (*Id*.) Under the 2000 Agreement, if Telefonix and Response wished to proceed with the non-discounted rate, the parties would agree to that modification at the start of the new project. (*Id*. ¶¶ 14, 17.)

Between 2000 and 2008, Telefonix unilaterally reduced the royalty rate from $0.25/each to $0.10 each, without disclosing to Response that it had made such a reduction. (*Id*. ¶ 17.) Response discovered this reduction on or about May 17, 2011 when Telefonix provided Response with a partial accounting of royalties for 2008-2010. (*Id*.) Response also learned, in early 2010, that Telefonix had omitted payments for some 2.5" cord reels sold. (*Id*. ¶ 18.)

Independent of any Telefonix product, Skowronski conceived of and invented the "rotating ferrule," which extends the life of a cord reel. (*Id*. ¶ 20.) Skowronski claimed this invention by U.S. Patent Application 12/951,354. (*Id*. ¶ 22.) Telefonix agreed to pay Response the discounted $35 rate plus a royalty fee for any reel cord using the rotating ferrule based on a new royalty agreement that they would formalize in the future. (*Id*. ¶ 21.)

---

[1] A cord reel is a device from which a telephone cord could be extended then retracted for neat storage when not in use. (Counter. ¶ 7.)

Skowronski also invented a new, unique cord reel technology, the "conductive ratchet," described in U.S. Patent Application No. 12/573,854 which resulted in U.S. Patent No. 8,123,010 (the "'010 patent"). (*Id*. ¶¶ 23, 25.) Telefonix agreed to pay the $35 discounted rate plus a royalty based on a new royalty agreement that they would formalize in the future, for each product sold using the new technology. (*Id*. ¶ 24.) In exchange for the promise of a fair royalty on products using the rotating ferrule or conductive ratchet technology, Skowronski assigned to Telefonix the rights to the patent application that resulted in the '010 patent. (*Id*. ¶ 26.)

Michael Kuehn ("Kuehn") of Telefonix and Telefonix demanded that Skowronski also assign to Telefonix the priority right in China for the patent application that resulted in the '010 patent. (*Id*. ¶ 27.) To induce Response and Skowronski to assign these rights, Kuehn represented to Skowronski that, if Skowronski immediately executed the assignment, Telefonix would execute a new royalty agreement with Response for the rotating ferrule and conductive ratchet technologies. (*Id*. ¶ 28.) Based upon these representations, Skowronski executed the assignment on December 23, 2010. (*Id*. ¶ 29.)

Neither Kuehn nor Telefonix has entered into a new written royalty agreement with Response or paid any royalties on the rotating ferrule or conductive ratchet technology. (*Id*. ¶¶ 26, 30.)

**LEGAL STANDARD**

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of

3

what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). A plaintiff may plead himself out of court by alleging facts showing that he has no legal claim. *See Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 600 (7th Cir. 2012); *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

## ANALYSIS

Telefonix moves to dismiss Defendants' counterclaims for promissory estoppel (Counterclaims V-VI) and unjust enrichment (Counterclaims VII-VIII) for failure to state a claim. (Mot. to Dis. at 1-2.) Telefonix specifically argues that Defendants' unjust enrichment claims must meet the heightened pleading standards of Rule 9. (*Id*. at 5-8.) Telefonix also seeks to dismiss all of Defendants' quasi-contractual claims (Counterclaims V-XI) because each count, while purporting to be pled in the alternative, improperly incorporates allegations that a valid contract exists. (*Id*. at 2) The Court addresses each argument in turn.

I.        **Pleading Standard for Unjust Enrichment Claims (Counterclaims VII and VIII)**

Telefonix argues that Defendants' counterclaims for unjust enrichment implicate the heightened pleading standard of Rule 9(b) because these claims "plainly sound in fraud." (Mot. to Dis. at 5-8.) The Court disagrees.

In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Rule 9(b)'s standard can apply to counts based on fraudulent conduct, not just counts of fraud. *See e.g.*, *RMB Fasteners, Ltd. v. Heads & Threads Intern., LLC*, No. 11 CV 02071, 2012 WL 401490, at *10 (N.D. Ill. Feb. 7, 2012) ("Rule 9(b)'s heightened pleading standard applies to averments of fraud, not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations.") (citing *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotations omitted). "Fraud includes anything calculated to deceive, whether it be a single act or combination of circumstances, whether the suppression of truth or the suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or by silence, by word of mouth or by look or gesture." *Strohmaier v. Yemm Chevrolet*, 211 F. Supp. 2d 1036, 1043 (N.D. Ill. 2001) (citing *Regenold v. The Baby Fold, Inc.*, 68 Ill.2d 419, 435, 12 Ill. Dec. 151, 369 N.E.2d 858 (1977)). Defendants base their unjust enrichment claims on a breach of a "representation, agreement and promise" by Telefonix that it would pay royalties to compensate Response and Skowronski rather than on any deceptive conduct. (Counter. ¶¶ 30, 78-79, 82-83.); *see also Pirelli*, 631 F.3d 436, 447 (7th Cir. 2011) ("For example, a breach of a contract, or of a fiduciary duty, might create a situation in which someone has retained a benefit that ought to be disgorged based on

5

principles of equity.")

Telefonix relies on *Global Tech. & Trading, Inc. v. Satyam Comp. Servs. Ltd.* where "the gist of the unjust enrichment claim [was] that the Defendant intentionally induced Plaintiffs to perform the consulting services with false promises of payment." No. 09 CV 5111, 2011 WL 308162, at *4 (N.D. Ill. Jan. 28, 2011). Unlike the plaintiffs in *Global Tech*, Defendants have not alleged in their unjust enrichment claims that Telefonix induced their performance through fraud or false promise. By comparison, Defendants specifically allege inducement in Defendants' promissory estoppel claims (Counterclaims V and VI). (Counter. ¶¶ 65, 72.) Indeed, Defendants base their unjust enrichment claims on Telefonix receiving considerable value from the services, technology and patent rights provided by Response without fairly compensating Response, not on fraudulent inducement or other fraudulent behavior. (*Id*. ¶¶ 78-79, 82-83.)

Telefonix's citation to *United States ex rel. Lusby v. Rolls Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009) is also misplaced as Defendants have not alleged that Telefonix "[made] a promise while planning not to keep it." 570 F.3d 849, 854 (7th Cir. 2009) ("Simple breach of contract is not fraud, but making a promise while planning not to keep it is fraud, and this complaint alleges the promise, *the intent not to keep that promise*, and the details of non-conformity.") (emphasis added); (Mot. to Dis. at 6.)

Because Defendants ground their unjust enrichment claims on a breach of a promise, not fraud, Rule 9(b) does not apply and Telefonix's argument fails.

## II. Promissory Estoppel Claims (Counterclaims V-VI)

To establish a promissory estoppel claim under Illinois law, Defendants must prove that: (1) Telefonix made an unambiguous promise to them; (2) Defendants reasonably relied upon the promise; (3) Defendants' reliance was expected and foreseeable to Telefonix; and (4) Defendants relied on the promise to their detriment. *See Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005) (citing *Quake Constr., Inc. v. Am. Airlines, Inc.*, 141 Ill.2d 281, 309-10, 152 Ill. Dec. 308, 565 N.E.2d 990 (Ill. 1990)). Contrary to Telefonix's arguments, Defendants have sufficiently alleged an unambiguous promise under Rule 8.

Specifically, Defendants allege that they relied on Telefonix's promise that it would enter into a new written agreement reflecting a fair royalty rate for all cord reels using the rotating ferrule or conductive ratchet technology, and would pay this fair royalty on each reel. (Counter. ¶¶ 64-67, 71-74.) Relying on *White Pearl Inversiones, et al v. Cemusa, Inc.*, Telefonix argues that this does not constitute an unambiguous promise as it does not "contain actual details of how and when compensation would be paid by Telefonix to Defendants." No. 07 C 6365, 2010 WL 2836747, at *5 (N.D. Ill. July 16, 2010); (Mot. to Dis. at 9.) Additionally, Telefonix argues that Defendants' reference to a "fair" royalty is too vague to constitute an unambiguous promise. (Mot. to Dis. at 9.) The Court disagrees.

Unlike the promise in *White Pearl* that "[plaintiffs] would be compensated for their hard work," Telefonix's promise referenced a defined type of payment arrangement, particularly in light of the longstanding relationship between the parties. *White Pearl*, 2010 WL 2836747 at *5. Telefonix and Response specifically agreed that they would utilize the discounted rate plus royalty payment structure that they previously had utilized, and that they would memorialize this

7

new agreement in writing. (Counter. ¶¶ 23, 24, 26, 27, 30.) Promising to enter into a written agreement reflecting a particular previously utilized payment structure is multiple steps beyond a party simply stating during negotiations that the other party would be "compensated." Moreover, failing to agree upon an exact royalty rate does not render the promise too ambiguous. *See e.g.*, *Global Tech. & Trading, Inc. v. Satyam Comp. Servs. Ltd.*, No. CV 5111, 2011 WL 308162, at *2 (N.D. Ill. Jan. 28, 2011) (finding a promise "to compensate Plaintiffs in a manner consistent with the custom and practice in the industry for consulting and brokering services, but not in an amount less than $600,000" was unambiguous because there was no doubt that the defendant would pay for the services, even though the amount was unknown); *Installation Servs., Inc. v. Crown Castle Broadcast USA Corp.*, No. 06 C9, 04 C 6906, 2006 WL 2024220, at *2 (N.D. Ill. July 13, 2006) (refusing to grant summary judgment on unjust enrichment claim despite the fact that promise to reimburse plaintiff did not specify a price).

Telefonix's reliance on *Korean American Broadcasting Co., Inc. v. Korean Broadcasting Sys.*, No. 09 C 6665, 2010 WL 3075566, at *9-10 (N.D. Ill. Aug. 4, 2010), is similarly misplaced. In *Korean American Broadcasting* the court found that a promise "of a continued business relationship" was not unambiguous because it was "susceptible to multiple meanings and created no obligation." (*Id.*) The concept of entering into a written royalty agreement is much more definite than the nebulous idea of "a continued business relationship," particularly since Telefonix and Response entered into previous agreements describing royalty payments in 1994 and 2000. (Counter. ¶¶ 9-11, 13.)

Moreover, contrary to Telefonix's belief, "fair" is not "simply too vague a concept to constitute an unambiguous promise." (Mot. to Dis. at 9); *see e.g., Apple, Inc. v. Motorola*

*Mobility, Inc.*, 11 cv 178, 2011 WL 7324582, at *15 (W.D. Wis. 2011) (finding plaintiff stated a claim for promissory estoppel when defendant "made promises to the standards setting organizations through its commitments that it would license any essential patents under *fair, reasonable and non-discriminatory terms*.") (emphasis added). In order to survive summary judgment, it may be necessary for Telefonix to flush out the terms of the promise to demonstrate that there is no issue of material fact relating to its unambiguous nature. *See e.g., Demos v. Nat'l Bank of Greece*, 209 Ill. App. 3d 655, 661-62, 153 Ill. Dec. 856, 567 N.E.2d 1083, 1088 (Ill. App. Ct. 1991) (granting summary judgment on unjust enrichment claim because a promise to loan money that does not specify an interest rate or duration for the loan is too indefinite); *Sembos v. Phillips*, 376 F.3d 696, 704 (7th Cir.2004) (finding that a promise to provide employment that does not specify a salary or position is too ambiguous to survive summary judgment). At this stage, however, Defendants have pled "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting their claim for promissory estoppel. *Twombly*, 550 U.S. at 556.

**III.  Failure to Properly Plead Quasi-Contractual Relief in the Alternative**

Neither Telefonix nor Defendants contest that under the federal notice pleading standards, a party may plead in the alternative, although the pleadings may be inconsistent. *See Pirelli*, 631 F.3d at 448; *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006); Fed. R. Civ. P. 8(d)(2). Specifically, a party may plead breach of contract and plead for quasi-contractual relief in the alternative even though quasi-contractual relief is unavailable if a contract does exist. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). Telefonix argues, however, that Defendants' quasi-contractual claims (Counterclaims V-XI) fail because,

while purporting to plead these counterclaims in the alternative, Defendants improperly incorporate all of the allegations from the breach of contract claims, including that a contract exists. (Mot. to Dis. at 2.) Although Defendants argue that this is a "hyper technical contention," this error in their pleadings is sufficient to dismiss their claims without prejudice. (Defs.' Mem. at 13); *see e.g., Global Tech. & Trading, Inc. v. Satyam Comp. Servs. Ltd.*, No. 09 C 5111, 2009 WL 4788693, at *2 (N.D. Ill. Dec. 9, 2009) ("While the reference to the allegations of contract may have been simply an error on Plaintiffs' part, the incorporation of these allegations of contract militates in favor of dismissal.")

Defendants "may plead breach of contract in one count and [quasi-contractual claims] in others, [but they] may not include allegations of an express contract, which governs the relationship of the parties, in [quasi-contractual claims]." *Sharrow Grp. v. Zausa Dev. Corp.*, No. 04 C 6379, 2004 WL 2806193, at *3 (N.D. Ill. Dec. 6, 2004; *Ford v. Pacific Webworks, Inc.*, No. 09 CV 5111, 2011 WL 529265, at *4 (N.D. Ill. Jan. 28, 2011) ("breach of contract and unjust enrichment may be pleaded in the alternative as long as plaintiffs have not incorporated allegations of a contract into their unjust enrichment claim"); *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC.*, No. 11 C 2231, 2012 WL 1886440, at *15-16 (N.D. Ill. May 22, 2012) (dismissing unjust enrichment and promissory estoppel claims that incorporate paragraphs alleging the existence of a contract); *Vanco US, LLC v. Brink's, Inc.*, No. 09 C 6416, 2010 WL 5365373, at *7 (N.D. Ill. Dec. 14, 2010) (finding plaintiff did not properly plead unjust enrichment claim in the alternative when claim included allegations of an express contract); *DeGeer v. Gillis* 707 F. Supp. 2d 784, 799 (N.D. Ill. 2010) (finding plaintiff did not properly plead quantum meruit in the alternative because the count incorporated by reference the

10

complaint's other allegations, including those regarding his agreement with the defendants). The Court, therefore, dismisses Counterclaims V-XI without prejudice.

## CONCLUSION

For the foregoing reasons, the Court dismisses Counterclaims V-XI without prejudice. Defendants may file amended counterclaims on or before November 27, 2012.

**DATED: November 13, 2012**

        **ENTERED**

        _____
        **AMY J. ST. EVE**
        **United States District Court Judge**